UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| TOTAL FILTRATION SERVICES, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:06-0624 |
| | ) | Judge Echols |
| A.T. KEARNEY, INC., ELECTRONIC | ) | |
| DATA SYSTEMS CORPORATION, EDS MRO | ) | |
| SYSTEMS and EDS INFORMATION | ) | |
| SYSTEMS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

Pending before the Court is Defendants A.T. Kearney, Inc. ("ATK"), Electronic Data Systems Corporation ("EDS"), EDS MRO Systems ("MRO Systems") and EDS Information Systems, LLC's ("EIS') "Renewed Motion to Dismiss or, in the Alternative, to Transfer Venue" (Docket Entry No. 18), to which Plaintiff Total Filtration Services, Inc. ("Total Filtration") has responded in opposition (Docket Entry Nos. 12 & 24) and Defendants have replied (Docket Entry No. 19).

### I. CLAIMS

This lawsuit is based upon diversity of citizenship between the parties and includes claims by the Plaintiff for damages caused by alleged breach of contract and conversion, and requests the Court to render a declaratory judgment in construing the contract in its

1

favor. Because of the number of parties, it is essential to first identify each and their locations in order to place the facts and applicable law into perspective.

## II. **PARTIES**

Plaintiff Total Filtration is an Ohio corporation with its principal place of business in the state of Michigan. It is licensed to do business in Tennessee and its Chief Executive Officer and other officers and directors maintain their primary office for the corporation in Williamson County, Tennessee.

Plaintiff Total Filtration provides filters, filtration products, and services to industrial customers, some of whom use thousands of types and sizes of filters in their manufacturing processes. Total Filtration procures the filters that it supplies to customers from filter manufacturers, including its parent CLARCOR, Inc. and other CLARCOR companies. (Amended Complaint ¶ 5).

Total Filtration is a subsidiary of CLARCOR Inc., a non-party to this litigation. CLARCOR manufactures filters and filter-related products and provides a variety of services to its customers nationwide. CLARCOR has its corporate headquarters in Williamson County, Tennessee.

Defendant ATK is a Delaware corporation with its principal place of business in the state of Illinois. It is licensed to do

2

business and/or conducts business in Tennessee.  Until January of 2006, ATK was a wholly-owned subsidiary of EDS.

Defendant EDS is a Delaware corporation with its principal place of business in Texas.  It is licensed to do business in Tennessee and conducts business in Tennessee.

Defendant EIS also is a wholly-owned subsidiary of EDS.  MRO (an acronym for "Maintenance Repair Operations") Systems is another subsidiary or operating unit of EDS.  Both EIS and MRO Systems have the same corporate citizenship as EDS and both conduct business in Tennessee.  (Amended Complaint ¶ 2).  Collectively, the Defendants provide business consulting services to customers around the country, including Maintenance Repair Operations ("MRO services").  In that capacity they act as third-party purchasing agents for manufacturers, centralizing the purchasing and logistics for thousands of parts.  Through their purchasing savvy, Defendants are purportedly able to save their MRO clients a significant amount of money and the Defendants' compensation is tied to the savings realized by their clients.  (Amended Complaint ¶ 7).

### III.  FACTS

In 1999, Plaintiff Total Filtration became a supplier of in-plant filters, filter services, and products to DaimlerChrysler.

3

(Amended Complaint ¶ 6). Since then, it has supplied DaimlerChrysler filter products from over 250 companies.

In 2004, Defendant ATK entered into an agreement with DaimlerChrysler pursuant to which ATK would perform MRO services for DaimlerChrysler. Later that year, ATK became the new centralized purchasing agent of DaimlerChrysler. In that role, ATK informed Total Filtration that ATK would be selecting a single company to supply filtration products and services to a variety of DaimlerChrysler plants in the United States and Canada. ATK also informed Total Filtration that it was a candidate to be the single source supplier.

On December 16, 2004, Total Filtration entered into a "Memorandum of Understanding" with ATK (the "MOU"), pursuant to which Total Filtration agreed to provide filters, filtration services and products to numerous DaimlerChrysler facilities in the United States and Canada for a three-year period. (Amended Complaint ¶¶ 8-10). Approximately one year after the signing of the MOU, however, ATK assigned all of its MRO services business, including all related contracts, to EIS, another wholly-owned subsidiary of EDS. Neither ATK nor EDS notified Total Filtration at the time of the purported assignment that the MOU and/or the products and services under the MOU had been assigned to EIS. Total

Filtration claims that the rights and obligations under the MOU became obligations of EIS and/or MRO Systems after the assignment. (Comartin Decl. at ¶ 7).

In March of 2006, Defendants alleged that Total Filtration had improperly charged $1,300,000 in 2005 for "spot buys" of filters and services which were included under the MOU but were not covered by the monthly base payment agreed upon. Total Filtration denied Defendants' assertion and on March 30, 2006, exercised its right to terminate the MOU and gave notice to the Defendants.

The essence of Plaintiff's contract claim is that Defendants breached the MOU by failing to pay Total Filtration monthly base payments totaling $3,154,405.30 for the months of February through May 2006. Plaintiff also claims Defendants have failed to pay for agreed "spot buys" of filters and services which were not included in the base monthly payments of approximately $350,000.00. In addition to breach of contract damages, Plaintiff claims Defendants continued to use its inventory supplies at various plants and claims Defendants converted the inventory for their own purposes. Also, Plaintiff alleges Defendants owe Plaintiff for certain post-notice services and inventory used by Defendants at the DaimlerChrysler plants. Plaintiff also seeks a declaratory judgment which, among other things, would declare that Defendants committed a material

5

breach of the contract and that Total Filtration was no longer required to perform under the contract after Defendants breached the MOU agreement. (Amended Complaint ¶¶ 25-35).

## IV. STANDARDS OF REVIEW

### A. Jurisdiction

The burden to establish the jurisdiction of the Court is on the Plaintiff. Third Nat'l Bank v. Wedge Group Inc., 882 F.2d 1087, 1089 (6th Cir. 1989); Inter-City Prod. Corp. v. Willey, 149 F.R.D. 563, 570 (M.D. Tenn. 1993). In considering a Motion to Dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the Court need not hold an evidentiary hearing, but may rely solely on the pleadings, affidavits, and other written submissions of the parties. See Third Nat'l Bank, 882 F.2d at 1089. If the Court proceeds in that manner, the burden on the Plaintiff is relatively slight, as the Plaintiff must make only a prima facie showing of jurisdiction with the Court considering the facts in the light most favorable to the Plaintiff. Id.

### B. Venue

The Plaintiff also bears the burden of showing that venue is proper. Gomberg v. Shosid, 2006 WL 1881229 at *9 (E.D. Tenn. 2006). On a motion to dismiss for improper venue, the Court may examine facts outside the complaint, but must draw all reasonable inferences

6

and resolve factual conflicts in favor of the Plaintiff. Gone to the Beach, LLC v. Choicepoint Serv., 2006 WL 1645046 at *2 (W.D. Tenn. 2006); Audi AG v. Izumi, 204 F.Supp.2d 1013, 1017 (E.D. Mich. 2002).

## V. ANALYSIS

### A. Personal Jurisdiction Over The Defendants

In order for this Court to have personal jurisdiction over the Defendants, the Plaintiff must show the Defendants have sufficient minimum contacts with Tennessee such that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); Young v. Track, Inc., 324 F.3d 409, 417 (6th Cir. 2003). Minimum contacts exist where the Defendants purposefully avail themselves of the privilege of conducting activities within the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). Defendants who invoke the benefit and protections of the state's laws "should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

While a Court may have either general or specific jurisdiction over a Defendant, Fortis Corporate Ins. v. Viken Ship Mgmt., 450 F.3d 213, 218 (6th Cir. 2006), Plaintiff claims only general

7

jurisdiction in this case because of Defendants' significant and continuing contacts within Tennessee. Unlike specific jurisdiction, "[g]eneral jurisdiction is established 'when a defendant has continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims.'" Id. (citation omitted).

With regard to Defendant ATK, Plaintiff points out that, as a private company, the public information regarding its dealings is not readily available. Nevertheless, Plaintiff notes ATK is a global consulting firm which is registered to do business in Tennessee and that it has provided executive search services to the University of Tennessee.

As for the remaining Defendants, Plaintiff claims that Defendants EDS and its affiliates have continuous and systematic contacts with Tennessee by virtue of their involvement with TennCare, the managed health care program instituted by the state of Tennessee to replace the Medicaid program. According to the submissions by Plaintiff, in 1995, EDS contracted with Tennessee to maintain the TennCare Management Information Systems ("TMIS") and to serve as TennCare's facilities manager pursuant to a contract for a term of years worth eighty-nine million dollars. In 2000, Tennessee sought an updated TMIS and future facilities manager. In

8

its bid for the contract, EDS repeatedly emphasized its long-standing relationship with Tennessee and noted its eagerness to continue that relationship. EDS was successful in securing a new contract worth in excess of sixty-three million dollars. Under that contract, EDS agreed not only that it could be sued in Tennessee, but also that it would sue only in Tennessee and seek redress through Tennessee courts in relation to disputes about the contract. Similarly, EIS, which is apparently solely owned by members of EDS, is a signatory to the same contract and under that contract agreed to maintain employees and an office in Nashville, Tennessee.

Tellingly, in their response brief, Defendants do not challenge Plaintiff's assertion about Defendants' continued and systematic contacts with Tennessee. Quite the contrary, Defendants chastise Plaintiff for "spending most of its breath arguing what is not disputed – that A.T. Kearney, Inc. and EDS have considerable, but all unrelated, contacts with the State of Tennessee."[1] (Docket Entry 14 at 1). This position ignores the distinction between general and specific jurisdiction since, by definition, general jurisdiction provides for "personal jurisdiction over the defendant even if the

---

[1] Defendants claim Plaintiff has "wasted its breath" because Plaintiff focused on this issue and not Defendants' alternate request that this case be transferred. However, Defendants raised the meritless claim that the Court has no jurisdiction over them and Plaintiff cannot be faulted for forcefully responding in opposition.

9

action is unrelated to the defendant's contacts with the state." Intera Corp. v. Henderson, 428 F.3d 605, 615 (6th Cir. 2005).

All Plaintiff need do at this juncture is carry the burden of establishing a prima facie case of personal jurisdiction. Given the evidence presented by the Plaintiff and Defendants' apparent concession that they have significant contacts with Tennessee, the Court finds it has general jurisdiction over Defendants.

**B. Venue**

As an alternative, Defendants seek to transfer this action pursuant to 28 U.S.C. 1404(a) which provides that "for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." A decision on whether to transfer lies within the broad discretion of the trial court. Bunting ex rel. Gray v. Gray, 2 Fed. Appx. 443, 448 (6th Cir. 2001). "[I]n ruling on a motion to transfer under § 1404(a), a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric 'interest of justice.'" Moore v. Rohm & Haas Co., 446 F.3d 643, 647 (6th Cir. 2006)(citation omitted).

10

Defendants argue this case should be transferred to the Eastern District of Michigan because the majority of their party witnesses are in Michigan; compulsory process will not be available in Tennessee for some witnesses; the bulk of the documents underlying the dispute are in Michigan; the MRO Systems' headquarters is there; and the Eastern District of Michigan is convenient for Plaintiff. For its part, Plaintiff argues that Defendants' assertion that Michigan is convenient for Plaintiff is "patronizing"; preference should be given to the fact that it chose to file in Tennessee; the witnesses and documents are scattered among many states; and the location of the events giving rise to this suit is unclear, since administration of the contract could have occurred not only in Michigan, but also occurred in Tennessee and its DaimlerChrysler plants where Plaintiff placed employees to monitor the filter usage and services. In lieu of a decision at this time, Plaintiff also suggests that the Court should defer ruling until discovery has been undertaken with respect to the venue issue.

The Supreme Court has noted that "where issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 n. 13 (1978). In recognition of this, several courts have deferred ruling on motions to change venue until the parties

11

have had an opportunity to conduct discovery relating to the convenience of the alternative fora. See, <u>In re American Continental Corp.</u>, 102 F.3d 1524, 1543 ("a proper application of section 1404(a) often depends on information obtained through discovery"), rev'd on other grounds, <u>Lexcon Inc. v. Milberg Wiess Bershad Hynes & Lerach</u>, 523 U.S. 26 (1998); <u>Roberti v. Longworth</u>, 164 F.Supp.2d 395, 395-96 (S.D.N.Y. 2001)(denying motion to transfer "without prejudice to any application by any party to be made after pretrial discovery has been concluded, and the names and locations of necessary witnesses have been ascertained"); <u>Controlotron Corp. v. Perry Printing Corp.</u>, 1990 WL 86085 (D.N.H. 1990)(denying motion to dismiss or transfer without prejudice and ordering parties to "engage in discovery limited to ascertaining facts relevant to the issues of jurisdiction and venue").

The parties have provided very little in the way of specifics underlying their positions regarding transfer and instead argue in very general terms about the locations of witnesses, documents and other matters placed in issue by the motion to transfer. The Court is unable to make a reasoned judgment about the propriety of transfer based on these generalizations. For that reason, the Court will deny Defendants' Motion to Transfer. However, that denial will be without prejudice to Defendants' re-filing a motion for transfer

12

Case 3:06-cv-00624   Document 31   Filed 12/13/06   Page 12 of 13 PageID #: 424

after the parties have conducted discovery on the issue of the appropriate venue.

## VI. CONCLUSION

On the basis of the foregoing, the Court will deny Defendants' "Renewed Motion to Dismiss or, in the Alternative, to Transfer Venue" (Docket Entry No. 22). However, that denial will be without prejudice to Defendants' re-filing a Motion to Transfer Venue after the parties have conducted discovery on the issue of whether this case should be transferred to the Eastern District of Michigan.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE

13