UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TOTAL FILTRATION SERVICES, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:06-0624 |
| ) | Judge Echols |
| A.T. KEARNEY, INC., ELECTRONIC ) | |
| DATA SYSTEMS CORPORATION, EDS MRO ) | |
| SYSTEMS and EDS INFORMATION ) | |
| SYSTEMS, LLC, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

Pending before the Court is Defendants A.T. Kearney, Inc., Electronic Data Systems Corporation, EDS MRO Systems and EDS Information Services LLC's "Renewed Motion to Transfer Venue" (Docket Entry No. 37) in which Defendants seek to transfer this case to the United States District Court for the Eastern District of Michigan. Also pending is "Defendants' Request for Leave to File a Reply" (Docket Entry No. 41).[1]

## I. FACTS

This Court previously addressed the underlying facts of this case in a Memorandum and Order (Docket Entry Nos. 31 & 32) in relation to Defendants' Motion to Dismiss or, in the Alternative,

---

[1] The request to file a reply merely addresses the weight to be given a string of e-mails which Plaintiff utilized in responding to the motion to transfer. The Request for Leave to File a Reply will be granted.

1

to Transfer. Those facts are recounted to place the Renewed Motion to Transfer in context.

Plaintiff Total Filtration is an Ohio corporation with its principal place of business in the state of Michigan. Total Filtration provides filters, filtration products, and services to industrial customers, some of whom use thousands of types and sizes of filters in their manufacturing processes. Total Filtration procures the filters that it supplies to customers from filter manufacturers, including its parent CLARCOR, Inc. and other CLARCOR companies. (Amended Complaint ¶ 5). Total Filtration is a subsidiary of CLARCOR Inc., a non-party to this litigation which has its corporate headquarters in Williamson County, Tennessee.

Defendant ATK is a Delaware corporation with its principal place of business in the state of Illinois. Until January of 2006, ATK was a wholly-owned subsidiary of EDS. Defendant EDS is a Delaware corporation with its principal place of business in Texas. Defendant EIS also is a wholly-owned subsidiary of EDS. MRO (an acronym for "Maintenance Repair Operations") Systems is another subsidiary or operating unit of EDS. Both EIS and MRO Systems have the same corporate citizenship as EDS.

Collectively, the Defendants provide business consulting services to customers around the country, including Maintenance Repair Operations ("MRO services"). In that capacity they act as third-party purchasing agents for manufacturers, centralizing the

2

purchasing and logistics for thousands of parts. Defendants are purportedly able to save their MRO clients a significant amount of money and the Defendants' compensation is tied to the savings realized by their clients. (Amended Complaint ¶ 7).

In 1999, Plaintiff Total Filtration became a supplier of in-plant filters, filter services, and products to DaimlerChrysler. (Amended Complaint ¶ 6). In 2004, Defendant ATK entered into an agreement with DaimlerChrysler pursuant to which ATK would perform MRO services for DaimlerChrysler. Later that year, ATK became the new centralized purchasing agent of DaimlerChrysler. In that role, ATK informed Total Filtration that ATK would be selecting a single company to supply filtration products and services to a variety of DaimlerChrysler plants in the United States and Canada. ATK also informed Total Filtration that it was a candidate to be the single source supplier.

On December 16, 2004, Total Filtration entered into a "Memorandum of Understanding" with ATK (the "MOU"), pursuant to which Total Filtration agreed to provide filters, filtration services and products to numerous DaimlerChrysler facilities in the United States and Canada for a three-year period. (Amended Complaint ¶¶ 8-10). Approximately one year after the signing of the MOU, however, ATK assigned all of its MRO services business, including all related contracts, to EIS, another wholly-owned subsidiary of EDS. Neither ATK nor EDS notified Total Filtration

3

at the time of the purported assignment that the MOU and/or the products and services under the MOU had been assigned to EIS. Total Filtration claims that the rights and obligations under the MOU became obligations of EIS and/or MRO Systems after the assignment. (Comartin Decl. at ¶ 7).

In March of 2006, Defendants alleged that Total Filtration had improperly charged $1,300,000 in 2005 for "spot buys" of filters and services which were included under the MOU but were not covered by the monthly base payment agreed upon. Total Filtration denied Defendants' assertion and on March 30, 2006, exercised its right to terminate the MOU and gave notice to the Defendants.

The essence of Plaintiff's claim in this case is that Defendants breached the MOU by failing to pay Total Filtration monthly base payments totaling $3,154,405.30 for the months of February through May 2006. Plaintiff also claims Defendants have failed to pay for agreed "spot buys" of filters and services which were not included in the base monthly payments of approximately $350,000.00. In addition, Plaintiff claims Defendants continued to use its inventory supplies at various plants and claims Defendants converted the inventory for their own purposes. Also, Plaintiff alleges Defendants owe Plaintiff for certain post-notice services and inventory used by Defendants at the DaimlerChrysler plants.

On December 13, 2006, this Court entered an Order denying Defendants' Motion to Dismiss and its alternative request that the

case be transferred to the Eastern District of Michigan. In doing so, however, the Court provided that Defendants could renew their request after conducting discovery on the issue of whether this case should be transferred.

## II. <u>ANALYSIS</u>

Section 1404(a) of Title 28 provides that "for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). A decision on whether to transfer lies within the broad discretion of the trial court. <u>Bunting ex rel. Gray v. Gray</u>, 2 Fed. Appx. 443, 448 (6th Cir. 2001).

"[I]n ruling on a motion to transfer under § 1404(a), a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric 'interest of justice.'" <u>Moore v. Rohm & Haas Co.</u>, 446 F.3d 643, 647 (6th Cir. 2006)(citation omitted). Therefore, in deciding whether the present forum is inconvenient, the Court considers a number of factors, including (1) the location of willing and unwilling witnesses; (2) the residence of the parties; (3) the location of sources of proof; (4) the location of the events that gave rise to the dispute; (5) systemic integrity and fairness; and

5

(6) the plaintiff's choice of forum. Id.; Kerobo v. Southwestern Clean Fuels, Corp., 285 F.3d 531, 537 (6th Cir. 2002); Moses v. Bus. Card Express, Inc., 929 F.2d 1131, 1137 (6th Cir. 1991); Moeckel v. Caremark Rx, Inc., 385 F.Supp.2d 668, 686 (M.D. Tenn. 2005). While Total Filtration's choice of forum should be given weight, this factor is not dispositive. Lewis ACB Business Servs., Inc. 135 F.3d 389, 413 (6th Cir. 1998).

It appears that the witnesses named as having knowledge about the matters at stake in this lawsuit are scattered among various states, although a majority are (or at relevant times were) located in Michigan. In fact, in its Initial Disclosures, Plaintiff identifies twenty-five current or former employees who may have discoverable information, twenty-one of whom are listed as having a business address in Auburn Hill, Michigan, which is in the Eastern District of Michigan. The other four are not located in Tennessee; two have business addresses in Chantilly, Virginia, and two have business addresses in Cincinnati, Ohio.

Plaintiff's responses to Defendant's interrogatories also show that Tennessee is hardly a hub for witnesses in this case. Quite the contrary, while Plaintiff identifies approximately thirty witnesses as having knowledge of the contract, only three reside in Tennessee. Those three are officers of CLACOR Inc. (Total Filtration's parent corporation and not a party to this suit), and

6

apparently none of whom was involved in the negotiations of the contract at issue.

Likewise, the witnesses identified by Defendants mostly reside or work in the Eastern District of Michigan. In their initial disclosures, Defendants identify fourteen potential witnesses, thirteen of whom are currently located in the Eastern District of Michigan. The one who is not located in Michigan is located in Chicago, Illinois, not Tennessee.

The convenience of the witnesses is often considered to be the most important factor when determining which forum is the most convenient. See, Romanowski v. RNI, LLC, 2007 WL 323019 at *3 (N.D. Ca. 2007); American Steamship Owners v. LaFarge North America, Inc., 2007 WL 214408 at *6 (S.D.N.Y. 2007); Olberding v. Union Pacific R. Co., 2007 WL 148816 at *2 (W.D. Mo. 2007). As Plaintiff observes, however, the determination of the convenience of witnesses is not merely a "head count," but includes a consideration of the importance of each witness and "includes both non-party witnesses outside the scope of the Court's subpoena power and the geographic location of any witnesses likely to testify in the case." Costco Wholesale Corp. v. Liberty Mut. Ins. Co., 2007 WL 412429, at *8 (S.D. Cal. 2007).

In its response, Total Filtration lists what it views to be its key witnesses. Even in that listing, however, only two individuals are from Tennessee, the remainder are located in

7

various states, and admittedly three important witnesses are located in Michigan. Further, in response to interrogatories, Total Filtration indicates that most of the negotiations, communications, and discussions relating to the MOU's were between Mr. Semak in Auburn Hills, Michigan and Mr. Paluri in Chicago Illinois. As for performance under the MOU and the disputed "spot buy" process, Mr. Semak and Mr. Hamilton of ATK from Novi, Michigan sat down at least once a month to discuss the spot buy process. Additionally, Ms. Riter of Auburn Hills, Michigan would e-mail Mr. Hamilton "sometimes as often as daily" to seek approval and be paid for "spot buys."

Whether viewed in sheer numbers or in terms of importance, it appears clear that Michigan is the locale for the vast majority of witnesses who will testify in this case. Conversely, few witnesses hale from Tennessee and only one of that number appears to be an important witness. The convenience of witnesses factor weighs heavily in favor of transfer.

Other considerations also weigh in favor of transfer. The actions giving rise to this suit took place primarily in Michigan and it is a dispute which indisputably is governed by Michigan law. Total Filtration, while an Ohio corporation, has its principal place of business in Michigan. The dispute involves supplying filtration services and products to automaker DaimlerChrysler and

8

it is not inconceivable, as Defendants point out, that expert witnesses in the auto industry are likely to reside in Michigan.

Plaintiff asserts that Defendants are engaging in delaying tactics by filing the Motion to Transfer and that this factor counsels against transferring the case. However, the record reflects that Defendants have been diligent in pursuing a motion to transfer. After this case was removed from state court on June 21, 2006, Defendants filed a Motion to Dismiss or in the Alternative to Transfer on July 10, 2006. While that motion was pending, Plaintiff filed an Amended Complaint on August 4, 2006, to which Defendants filed a Renewed Motion to Dismiss or Transfer on August 18, 2006. The Court ruled on that Motion on December 13, 2006 and in that ruling, at Plaintiff's suggestion, provided that the parties could conduct discovery on the issue of venue and provided that Defendants would have sixty days to file a renewed motion to transfer. Defendants did so on January 18, 2007. This timetable suggests that Defendants promptly pursued their right to seek a transfer and hence the Court does not consider this to be a factor weighing against transfer.

Apart from the fact that CLARCOR, the non-party parent corporation of Total Filtration is headquartered in Tennessee and a couple of witnesses (including officers of CLARCOR) may come from this state, there is little connection between this state and the dispute in issue. On the other hand, as Defendants aptly observe

9

"[t]his is a Michigan case regarding activities that took place in Michigan pursuant to a contract governed by Michigan law about which Michigan witnesses will testify." (Docket Entry No. 38 at 1). Accordingly, for the convenience of parties and witnesses and in the interest of justice, the Court will exercise its discretion and transfer this case to the Eastern District of Michigan.

### III. CONCLUSION

On the basis of the foregoing, Defendants' "Renewed Motion to Transfer Venue" (Docket Entry No. 37) will be granted and this case will be transferred to the United States District Court for the Eastern District of Michigan. Additionally, "Defendants' Request for Leave to File a Reply" (Docket Entry No. 41) will also be granted.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE

10